2025 IL App (1st) 230318-U
No. 1-23-0318

FIRST DIVISION
January 21, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 03 CR 10060 |
| | ) | |
| HUGO SANCHEZ, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Joanne F. Rosado, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held:* (1) The State proved defendant guilty beyond a reasonable doubt of predatory criminal sexual assault. (2) The State proved defendant guilty beyond a reasonable doubt of aggravated criminal sexual assault. (3) The State proved defendant guilty beyond a reasonable doubt of aggravated kidnapping. (4) The State proved defendant guilty beyond a reasonable doubt of child pornography on counts 72, 73, 87, and 88. (5) The indictments for counts 71 and 86 for child pornography do not allege a criminal offense. (6) The circuit court improperly sentenced defendant to 14 years of imprisonment on counts 87 and 88 for child pornography.

¶ 2     Defendant Hugo Sanchez appeals his convictions and sentences for predatory criminal sexual assault, aggravated criminal sexual assault, aggravated kidnapping, and child

pornography. He argues that the State failed to prove him guilty beyond a reasonable doubt of each conviction. He also alleges that the indictments for two counts of child pornography—71 and 86—were defective. He further contends that the circuit court improperly sentenced him on three counts of child pornography. We affirm in part and reverse in part.

¶ 3                                    I. BACKGROUND

¶ 4        A grand jury indicted defendant with 88 counts of sex offenses committed against nine-year-old C.M. from 2001 to 2002. In 2003, defendant was arraigned and the court set a bond. Defendant posted bond, failed to appear for his next court date, and fled to Mexico. In 2018, the State extradited defendant from Mexico.

¶ 5        In 2022, the State proceeded to trial on count 1 for predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 2002)); count 3 for aggravated criminal sexual assault (*id.* § 12-14(a)(2)); count 65 for aggravated kidnapping (*id.* § 10-2(a)(2)); and counts 71, 72, 73, 86, 87, 88 for child pornography (*id*. § 11-20.1(a)(1)(ii), (a)(1)(iv), (a)(6)(ii), (a)(6)(iv)). Count 3 for aggravated criminal sexual assault alleged: "that [defendant], intentionally or knowingly committed an act of sexual penetration upon [C.M.], to wit: contact between [defendant's] and [C.M.'s] vagina, by the use of force or threat of force, and [defendant] caused bodily harm to [C.M.], to wit: transection to [C.M.'s] hymen***." Counts 71 and 86 for child pornography alleged that the content of the video defendant videotaped and possessed depicted C.M. engaging in an act of sexual contact involving her mouth and defendant's mouth.

¶ 6        The State filed a motion for joinder of related prosecution, which sought to join this case with cases 03 CR 10061 and 03 CR 10062. Those cases charged defendant with sex offenses committed against C.M.'s older sister and younger sister, J.M. and E.M. During the hearing, the State informed the court of the allegations against defendant in each case. The State stated that

defendant and fifteen-year-old J.M. began what defendant referred to as a "boyfriend/girlfriend" relationship" in 2001. Their relationship involved weekly sexual intercourse. In 2003, J.M. suspected that defendant was having sexual intercourse with her two younger sisters. She searched defendant's bedroom and found a video which confirmed her suspicions. She showed the video to her mother who called the police. The circuit court denied the State's motion. The State filed a motion to use proof of other crimes, which the circuit court granted.

¶ 7        At trial, C.M. testified that she was born on May 26, 1991. She was approximately 31 years old at the time of the trial. She testified that she grew up in a two-story home located at 5416 South Washtenaw in Chicago, Illinois. She lived with her mother, father, two brothers, and two sisters. Defendant later moved into the basement of the home. At the time, she was approximately nine years old, her sister E.M. was approximately seven years old, and her sister J.M. was approximately twelve years old. Defendant would spend time with her parents and was a member of the family. The State asked C.M., "[y]ou say he hung out with your parents. Do you know how old defendant was at the time?" C.M. answered, "[n]o. I know he was over 18. He was working and he used to go to work."

¶ 8        C.M. testified that she shared a room with her sisters on the first floor of the home. Defendant had his own room in the basement of the home. C.M.'s parents and brothers lived on the first floor of the home. The State asked C.M., "[d]id you at any time go into the defendant's room?" C.M. responded, "[f]orcefully." She elaborated that when she went outside to play with her siblings, she had to go through the access where the basement is located to get to the backyard. Defendant would grab her as she went outside and carry her into his room when no one was around.

¶ 9    Inside his room, defendant would sexually assault C.M. Defendant would remove her clothing. Defendant either removed his pants or lifted his shirt up and lowered his pants. He then forced his penis inside of C.M.'s vagina. C.M. was approximately nine years old when this happened. Defendant sexually assaulted C.M. more than two times. Prior to the first time defendant sexually assaulted her, she was a virgin. Defendant injured C.M. when he put his penis inside her vagina. C.M. testified, "[t]he first time there was blood in my vagina. I saw it in between my legs and I had no idea what was going on."

¶ 10    C.M. identified People's Exhibit 1 as a photo of defendant. She identified People's Exhibit 2 as a photo of defendant as she remembered him from when she was approximately nine years old. She identified People's Exhibit 3 as a photo of herself when she was approximately nine years old. She identified People's Exhibit 4 as a photo of her sister E.M. when she lived at 5416 South Washtenaw. She identified People's Exhibit 5 as a video of her and defendant in his bedroom. People's Exhibit 5 was played for the jury. People's Exhibits 1 through 5 were admitted into evidence.

¶ 11    People's Exhibit 1 depicts defendant at the age of the trial. People's Exhibit 2 is a screenshot from a video. People's Exhibit 2 depicts defendant at the time of the offense sitting in his bed and staring directly at the video camera. The video camera is positioned at the foot of defendant's bed. The video camera is angled directly over the bed. People's Exhibit 3 is a screenshot from a video. People's Exhibit 3 shows C.M. at approximately nine years old. People's Exhibit 4 is a screenshot from a video. People's Exhibit 4 shows E.M. sitting on defendant's bed and defendant standing in the background. The video camera is positioned at the foot of defendant's bed. The video camera is angled directly over defendant's bed.

¶ 12 In People's Exhibit 5, defendant carries C.M. into his bedroom and lays her on his bed. Defendant presses his body on top of C.M. as he thrusts his pelvis and grinds on her. She attempts to break free of defendant throughout the video. At one point, defendant looks into the camera as he exposes C.M.'s breasts to the camera. Defendant closes the door to his bedroom. At the end of the video, defendant drags C.M. by her wrist out of his bedroom and turns off the lights.

¶ 13 C.M. testified that she was approximately nine years old when People's Exhibit 5 was recorded. She did not set up the video camera. Defendant touched her all over her body. He touched her breasts and buttocks. He forcibly kissed her on the mouth. She did not tell her parents because she feared that they would not believe her since defendant was a part of the family. She stated that her parents were "on the strict side," and she did not think they would believe her. Her parents did not give defendant permission to take her into his bedroom. She informed the police about the assaults when they arrested defendant in 2003.

¶ 14 On cross-examination, C.M. testified that at the time of the offense, she did not know about the video. She did not know how the video was captured, and she did not see the camera. Defense counsel asked her, "[a]nd you don't know where this video has been since that time either, do you?" She responded, "I think it's been here because I did hear about the video being out. Even when I was that age when we went to talk to the police, like we all knew there was a video."

¶ 15 E.M. testified that she was born on November 18, 1993. She was approximately 28 years old at the time she testified. She testified that she was approximately seven years old from 2001 to 2002. During that time, she lived at 5416 South Washtenaw in Chicago, Illinois. She lived with her parents, two sisters, two brothers, and defendant. She shared a room with her sisters on

the second floor. Defendant lived in the basement area. Defendant touched her in her privates and made her touch his penis. He touched her vagina with his penis. He would grab her hand and place it where he wanted. He forced her hand to touch his penis. He would undress her. She did not tell anyone because she was afraid at the time. She eventually informed the police.

¶ 16　　　　The jury convicted defendant on all counts. The presentence investigation report indicated that defendant's birth date was June 17, 1975. The circuit court sentenced defendant to 84 total years of imprisonment. The circuit court sentenced defendant to 28 years on count 1 for predatory criminal sexual assault, count 3 for aggravated criminal sexual assault, and count 65 for aggravated kidnapping, which were to be served consecutive to each other. Defendant was sentenced to 14 years on each of the six counts—71, 72, 73, 86, 87, and 88—for child pornography, which merged and were to be served concurrently with the other charges.

¶ 17　　　　Defendant appealed.

¶ 18　　　　　　　　　　　　　　II. ANALYSIS

¶ 19　　　　　　　　　　　　A. Sufficiency of the Evidence

¶ 20　　　　Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of predatory criminal sexual assault, aggravated criminal sexual assault, aggravated kidnapping, and child pornography.

¶ 21　　　　When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[I]n weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor

need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *Collins*, 106 Ill. 2d at 261. Thus, "the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 22        "Circumstantial evidence is proof of facts that give rise to reasonable inferences of other facts that tend to establish guilt or innocence of the defendant." *People v. Johnson*, 2018 IL App (1st) 150209, ¶ 19. A criminal conviction may be based solely on circumstantial evidence. *People v. Brown*, 2013 IL 114196, ¶ 49. We apply the same standard of review "regardless of whether the evidence is direct or circumstantial." *People v. Norris*, 399 Ill. App. 3d 525, 531 (2010).

¶ 23                                    1. *Predatory Criminal Sexual Assault*

¶ 24        Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of the offense of predatory criminal sexual assault. Specifically, he argues the State failed to prove that he was 17 years old or older at the time he committed the offense.

¶ 25        "The accused commits predatory criminal sexual assault of a child if: the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed***." 720 ILCS 5/12-14.1(a) (West 2002). The defendant's age is an element of predatory criminal sexual assault. *Id*. Still, the State need not

prove the defendant's exact age unless evidence tends to show he was under the requisite age. *People v. Flores*, 168 Ill. App. 3d 284, 290-91 (1st Dist. 1988).

¶ 26    Proof of the defendant's age cannot be satisfied by examination of defendant by the trier of fact. *People v. Boston*, 52 Ill. App. 3d 18, 19 (2nd Dist. 1977). However, "[t]he observation of the trier of fact may corroborate evidence of defendant's age." *Flores*, 168 Ill. App. 3d at 291. "A positive identification by a single eyewitness who had ample opportunity to observe is sufficient to support a conviction." *People v. Piatkowski*, 225 Ill. 2d 551, 566 (2007). "The trier of fact may accept or reject all or part of a witness's testimony. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85.

¶ 27    Although C.M. was nine years old at the time of the offense, she was 31 years old when she testified at trial. C.M. twice testified that defendant was a member of her family. See *In re S.M.*, 2015 IL App (3d) 140687, ¶ 16 (the State may establish a person's age as an element of an offense through testimony of a family member). While she did not provide defendant's exact age at the time of the offense, she conclusively stated that she *knew* defendant was over the age of 18. No evidence presented at trial indicated that defendant was under the age of 17. Rather, additional evidence corroborated C.M.'s statement that defendant was over the age of 18.

¶ 28    C.M. provided additional testimony to support her conclusion that she knew defendant was over the age of 18—he spent time socializing with her parents and he went to work. The State also admitted into evidence People's Exhibit 2, People's Exhibit 4, and People's Exhibit 5, which enabled the jury to observe defendant's appearance at the time of the offense. People's Exhibits 2, 4, and 5 corroborated C.M.'s testimony regarding defendant's age at the time of the offense.

¶ 29    Viewing the evidence in the light most favorable to the prosecution, the State proved beyond a reasonable doubt that defendant was over the age of 17 at the time of the offense through C.M.'s testimony and People's Exhibits 2, 4, and 5.[1]

¶ 30    2. *Aggravated Criminal Sexual Assault*

¶ 31    Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of the offense of aggravated criminal sexual assault. He initially claims that the State failed to prove the specific bodily harm alleged in the indictment, "transection to C.M.'s hymen." He then asserts that the State failed to prove bodily harm.

¶ 32    a. Variance Claim

¶ 33    Defendant argues that the State failed to prove beyond a reasonable doubt the specific bodily harm alleged in the indictment, "transection to C.M.'s hymen."

¶ 34    The State must prove the material elements of the charging instrument. *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 67. For a variance between the charging instrument and the proof at trial to be fatal, the difference must be material and be of such character as may mislead the defendant in making his or her defense. *People v. Collins*, 214 Ill. 2d 206, 219 (2005). The charging instrument must include " 'the name of the accused, the name, date and place of the offense, cite[] the statutory provision alleged to have been violated and set forth in the language of the statute the nature and elements of the offense charged.' " *Id.* (quoting *People v. Simpkins*, 48 Ill. 2d 106, 111 (1971). "Where an indictment charges all essential elements of an offense, other matters unnecessarily added may be regarded as surplusage." *Collins*, 214 Ill. 2d at 219. " 'An [allegation] is material when it is essential to the crime or cause of action and

---

[1] Although not before the jury nor necessary for our conclusion, the record indicates that defendant was born on June 17, 1975, and was, in fact, 26 to 27 years old during the time of the offense. To be clear, we are holding that the trial evidence was sufficient for the a rational trier of fact to conclude that the State proved beyond a reasonable doubt that defendant was over the age of 17.

cannot be stricken from the indictment or complaint without leaving it insufficient." *People v. Braddock*, 348 Ill. App. 3d 115, 125 (1st Dist. 2004).

¶ 35 A defendant commits criminal sexual assault if he or she commits an act of sexual penetration using force or threat of force. 720 ILCS 5/12-13(a)(1) (West 2002). A defendant commits aggravated criminal sexual assault if he or she commits criminal sexual assault and during the commission of the offense causes bodily harm to the victim. 720 ILCS 5/12-14(a)(2) (West 2002).

¶ 36 Here, the aggravated criminal sexual assault count of the indictment alleged that defendant "caused bodily harm to [C.M.]." The indictment then specified, "to wit: transection to [C.M.'s] hymen***." "Bodily harm" is an essential element of aggravated criminal sexual assault. See 720 ILCS 5/12-14(a)(2). If the phrase "to wit: transection to [C.M.'s] hymen" was stricken from the indictment, the remaining language would still include the required statutory elements. The type of bodily harm is entirely immaterial to the sufficiency of the charge and, therefore, the phrase "to wit: transection to [C.M.'s] hymen" is mere surplusage. See *Lattimore*, 2011 IL App (1st) 093238, ¶¶ 69-70; see also *Braddock*, 348 Ill. App. 3d at 125. Accordingly, the State did not need to prove beyond a reasonable doubt that defendant caused "transection to [C.M.'s] hymen."

¶ 37                                    b. Bodily Harm

¶ 38 Defendant also asserts that the State failed to prove beyond a reasonable doubt that he caused bodily harm to C.M.

¶ 39 "Bodily harm consists of 'physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent.' " *People v. Bishop*, 218 Ill. 2d 232, 250 (2005). "In determining whether a defendant's actions caused bodily harm, direct evidence of injury can

be considered, or the trier of fact may infer injury based upon circumstantial evidence in light of common experience." *Id*. "A positive identification by a single eyewitness who had ample opportunity to observe is sufficient to support a conviction." *Piatkowski*, 225 Ill. 2d at 566. "The trier of fact may accept or reject all or part of a witness's testimony. *Corral*, 2019 IL App (1st) 171501, ¶ 85.

¶ 40      Here, C.M. testified that defendant injured her when he put his penis inside her vagina. She further stated that she was a virgin prior to the first time defendant sexually assault her, and "[t]he first time there was blood in my vagina." Viewed in the light most favorable to the State, C.M.'s testimony was sufficient evidence of bodily harm.

¶ 41                                       *3. Aggravated Kidnapping*

¶ 42      Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of aggravated kidnapping. Specifically, he contends that the State failed to prove beyond a reasonable doubt that C.M.'s confinement was without the consent of her parents since the State did not call C.M.'s parents to testify.

¶ 43      A person commits the offense of kidnapping when he or she knowingly and secretly confines another against his or her will. 720 ILCS 5/10-1(a)(1) (West 2002). Confinement of a child under the age of 13 years is against that child's will if that confinement is without the consent of that child's parent. *Id*. § 10-1(b). A person commits aggravated kidnapping if he or she kidnaps a child under the age of 13 years. *Id*. § 10-2(a)(2). "Circumstantial evidence is proof of facts that give rise to reasonable inferences of other facts that tend to establish guilt or innocence of the defendant." *Johnson*, 2018 IL App (1st) 150209, ¶ 19. A criminal conviction may be based solely on circumstantial evidence (*Brown*, 2013 IL 114196, ¶ 49) and a single witness is sufficient to conviction (*Piatkowski*, 225 Ill. 2d 551, 566).

¶ 44    Here, the State asked C.M. whether her parents consented to defendant taking her into his bedroom. C.M. responded, "[n]o, absolutely not." C.M. also noted that her parents were "on the strict side." C.M. testified that defendant would force her into his bedroom when no one else was around. In People's Exhibit 5, defendant closed the door to his bedroom. "[T]he trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 232 Ill. 2d at 281. Viewing the evidence in the light most favorable to the State, the jury could reasonably infer that defendant grabbed C.M. when no one was around, and closed his bedroom door because he knew that her parents did not consent to him forcefully taking her into his bedroom. This conclusion was further supported by C.M.'s testimony.

¶ 45                    4. *Child Pornography*

¶ 46    Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of child pornography. Defendant alleges that the State failed to prove that he knowingly or intentionally videotaped People's Exhibit 5. He further contends that the State failed to prove that he possessed People's Exhibit 5. The State responds that it proved that defendant videotaped and possessed People's Exhibit 5 through circumstantial evidence.

¶ 47                    a. Knowledge or Intent

¶ 48    Defendant was convicted of three counts of child pornography for videotaping certain sexual acts between him and C.M—counts 71, 72, and 73. 720 ILCS 5/11-20.1(a)(1)(ii), (iv) (West 2002).

¶ 49    A person commits child pornography if he or she videotapes any child who he or she knows or reasonably should know to be under the age of 18 where such child is engaged in any

act of sexual penetration or sexual conduct involving the sex organs of the child and the mouth, anus, or sex organs of another person; or which involves the mouth, anus or sex organs of the child and the sex organs of another person; or where the child is actually engaged in any act of lewd fondling, touching, or caressing involving another person. 720 ILCS 5/11-20.1(a)(1)(ii), (iv) (West 2002). Child pornography is a specific intent crime. *People v. Dodds*, 2014 IL App (1st) 122268, ¶ 47. Accordingly, the State must have proved beyond a reasonable doubt that defendant knowingly or intentionally filmed C.M. *People v. Robinson*, 379 Ill. App. 3d 679, 683-84 (2nd Dist. 2008). "Knowledge is often proven by circumstantial evidence." *People v. Jasoni*, 2012 IL App (2d) 110217, ¶ 20. "Circumstantial evidence is proof of facts that give rise to reasonable inferences of other facts that tend to establish guilt or innocence of the defendant." *Johnson*, 2018 IL App (1st) 150209, ¶ 19.

¶ 50        Here, People's Exhibits 2, 4, and 5 established by circumstantial evidence that defendant knowingly videotaped sexual acts between himself and C.M. The position of the video camera is notable. The video camera is positioned directly at the foot of defendant's bed and angled to capture anything that happens on defendant's bed. In the People's Exhibit 2, defendant is staring directly into the video camera. During People's Exhibit 5, defendant exposes C.M.'s breasts to the camera while staring directly into the camera.  Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that defendant knowingly filmed sexual acts between himself and C.M.

¶ 51                                b. Possession

¶ 52        Defendant was convicted of three counts of child pornography for possessing the video that showed him engaging in sexual acts with C.M.—counts 86, 87, and 88. 720 ILCS 5/11-20.1(a)(1)(ii), (iv) (West 2002).

¶ 53    "Possession of child pornography may be established by proof of either actual and knowing physical possession or constructive possession." *People v. Jaynes*, 2014 IL App (5th) 120048, ¶ 46. "Proof of constructive possession is sufficient in establishing possession\*\*\*." *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 23. "Constructive possession exists when a defendant has the intent and capacity to maintain dominion and control over the [child pornography]." *People v. Horn*, 2021 IL App (2d) 190190, ¶ 39. "To establish constructive possession, the State must prove that defendant had knowledge of the [child pornography] and that defendant exercised immediate and exclusive control over the area where the [child pornography] was found." *Maldonado*, 2015 IL App (1st) 131874, ¶ 23. "A fact finder may infer control of premises if the defendant lived there." *People v. Jaynes*, 2014 IL App (5th) 120048, ¶ 46.

¶ 54    Above, we already determined that the State proved beyond a reasonable doubt that defendant had knowledge of the video camera. *Supra*, ¶ 50. Furthermore, C.M. and E.M. testified that only defendant lived in the basement and the remainder of the family lived upstairs. Viewing the light in the evidence most favorable to the State, the trier of fact could reasonably infer that defendant exercised exclusive control over the basement. Thus, the State established beyond a reasonable doubt that defendant constructively possessed the video tape.

¶ 55                            B. Defective Indictment

¶ 56    Defendant argues that his convictions for counts 71 and 86 must be vacated where the facts presented by the State did not allege a criminal offense. The State concedes that the convictions for counts 71 and 86 should be vacated because the facts presented did not allege a criminal offense.

¶ 57 "A criminal defendant has a fundamental right to be informed of the nature and cause of criminal accusations made against him." *People v. Carey*, 2018 IL 121371, ¶ 20. In Illinois, this right is set out in section 111-3 of the Code of Criminal Procedure of 1963 ("Code"). *People v. Meyers*, 158 Ill. 2d 46, 51 (1994).

> "Section 111-3(a) demands that the charging instrument be in writing, stating the name of the offense and the relevant statutory provision violated, setting forth the nature and elements of the offense and the date and county in which the offense occurred, and naming the accused if known or a reasonably certain description." *Id*. (citing 725 ILCS 5/111-3(a) (West 2002).

The failure to charge an offense implicates due process concerns. *People v. DiLorenzo*, 169 Ill. 2d 318, 321 (1996). Accordingly, it may be attacked at any time. *Id*.

¶ 58 If the charging instrument is attacked for the first time on appeal, "a charging instrument is sufficient if it notified the defendant of the precise offense charged with enough specificity to allow the defendant to (1) prepare his or her defense and (2) plead a resulting conviction as a bar to future prosecution arising out of the same conduct." *Carey*, 2018 IL 121371, ¶ 22. Put simply, the reviewing court must determine whether the defective charging instrument prejudiced defendant in preparing his defense. *Id*. A defendant is hindered in the preparation of his defense where he is forced to answer for crimes for which he could not be lawfully convicted. *People v. Libricz*, 2022 IL 127757, ¶ 42 (quoting *People v. Wasson*, 175 Ill. App. 3d 851, 855 (4th Dist. 1988)). A conviction based on a charging instrument which fails to state a criminal offense warrants reversal. *Libricz*, 2022 IL 127757, ¶ 45 (quoting *People v. Tellez-Valencia*, 188 Ill. 2d 523, 527 (1999).

¶ 59 Counts 71 and 86 charged defendant with violations of sections 11-20.1(a)(1)(ii) and 11-20.1(a)(6)(ii) of the Code. 720 ILCS 5/11-20.1(a)(1)(ii), (a)(6)(ii) (West 2002). Counts 71 and 86 for child pornography alleged that the content of the video defendant videotaped and

possessed depicted C.M. engaging in an act of sexual contact involving her mouth and defendant's mouth. However, sexual contact involving a child's mouth and another person's mouth is not a criminal offense under either section 11-20.1(a)(1)(ii) or 11-20.1(a)(6)(ii) of the Code. See *id*. Accordingly, counts 71 and 86 of the indictment failed to allege a criminal offense for which defendant could be lawfully convicted, and his convictions must be vacated.

¶ 60                                C. Improper Sentencing

¶ 61        Defendant next argues that his 14-year sentences for child pornography pursuant to section 11-20.1(a)(6) of the Code—counts 86, 87, and 88—are improper. The State agrees.

¶ 62        A defendant is entitled to be sentenced under either the law in effect at the time the offense was committed or at the time of sentencing. *People v. Reyes*, 2016 IL 119271, ¶ 12. At the time of the offense, a violation of section 11-20.1(a)(6) was a Class 3 felony. See 720 ILCS 5/11-20.1(c) (West 2002). For a Class 3 felony, the maximum sentence was five years. 730 ILCS 5/5-8-1(a)(6) (West 2002). Here, the circuit court improperly sentenced defendant to nine years over the maximum sentence for a violation of section 11-20.1(a)(6). Accordingly, we reduce defendant's sentences for counts 87 and 88 to five years of imprisonment for each count. We previously vacated defendant's conviction for child pornography on count 86.

¶ 63                                III. CONCLUSION

¶ 64        For the reasons stated above, we affirm defendant's convictions and sentences on count 1 for predatory criminal sexual assault, count 3 for aggravated criminal sexual assault, count 65 for aggravated kidnapping, and counts 72 and 73 for child pornography. We vacate defendant's convictions and sentences for counts 71 and 86 for child pornography. We affirm defendant's convictions for counts 87 and 88 for child pornography but reduce the sentence for each count to five years of imprisonment.

¶ 65        Affirmed in part and reversed in part.